☑ Original ☐ 

CLERK'S OFFICE
A TRUE COPY
Nov 17, 2021
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with the following Facebook Account associated with Sidney R. Gentry: LilDemon Gentry 100037287574461, that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California. | ) ) ) ) |

Case No. **21-M-514-SCD**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the      **Eastern**      District of      **Wisconsin**
*(identify the person or describe the property to be searched and give its location)*:

     See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

     See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    12-1-21    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. Stephen C. Dries    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    11-17-21. 9:00 am          *Judge's signature*

City and state:    Milwaukee, WI          Hon. Stephen C. Dries, U.S. Magistrate Judge
                                               *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the following Facebook Account associated with Sidney R. Gentry:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION -UID |
|---|---|
| LilDemon Gentry | 100037278574461 |

that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, photographs, videos, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including for user "LilDemon Gentry" with User ID 100037278574461**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the accounts and all other documents showing the users' posts and other Facebook activities;

(c)     All photos and videos uploaded by those user IDs and all photos and videos, including live video feeds, uploaded by any user that have either of those users tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)      All other records of communications and messages made or received by the users, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)      All "check ins" and other location information;

(g)      All IP logs, including all records of the IP addresses that logged into the accounts;

(h)      All records of the accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the users "liked";

(i)      All information about the Facebook pages that the accounts are or were a "fan" of;

(j)      All past and present lists of friends created by the accounts;

(k)      All records of Facebook searches performed by the accounts;

(l)      All information about the users' access and use of Facebook Marketplace;

(m)      The types of service utilized by the users;

(n)      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)      All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)    All records pertaining to communications between Facebook and any person

regarding the user or the users' Facebook accounts, including contacts with

support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and

instrumentalities of violations of Title 18, United States Code, Section 2119(1) (Motor Vehicle

Robbery); Title 18, United States Code, Section 924(c) (Use of Firearm during a Crime of

Violence or in Furtherance of Drug Trafficking); Title 18, United States Code, Section 922(g)

(Felon in Possession of a Firearm); and Title 21, United States Code, Sections 841(a)(1)

(possession with intent to distribute and distribution of controlled substances), occurring in

October 2021, involving Sidney Gentry, or any associate in the criminal violations, for the user

ID identified on Attachment A, including information pertaining to the following matters:

(a) Communications between known subjects.  Communications between known

subjects and unknown subjects.  Pictures of clothing, jewelry, or accessories worn

and the gun used during armed robbery.  Preparatory steps taken in furtherance of

the armed robbery.  Photos of vehicles involved in the armed robbery, including

but not limited to, the stolen Lexus.

(b) Communications or photographs related to firearms possession.

(c) Communications or photographs related to drug trafficking.

(d) Communications related to travel. Communications related to dates.

(e) Evidence indicating how and when the Facebook accounts were accessed or used,

to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account owner;

(f) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(h) The identity of the person(s) who communicated with the user ID 100037278574461 regarding matters relating to the aforementioned violations of the United States Code.

CLERK'S OFFICE
A TRUE COPY
Nov 17, 2021
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the following Facebook Account associated with Sidney R. Gentry: LilDemon Gentry 100037278574461, that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California. | )<br>)<br>)<br>)<br>)<br>)    Case No.   **21-M-514-SCD** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the   **Eastern**   District of   **Wisconsin**  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☐ contraband, fruits of crime, or other items illegally possessed;

   ☐ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | | *Offense Description* |
|---|---|---|
| See Attachment C. | See Attachment C. | |

The application is based on these facts:

See attached Affidavit.

   ☐ Continued on the attached sheet.

   ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Detective Caleb Porter
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____**Telephone**_____ *(specify reliable electronic means)*.

Date:    **11-17-21**

_____
*Judge's signature*

City and state:    Milwaukee, WI        Hon. Stephen C. Dries, U.S. Magistrate Judge

## **ATTACHMENT C**

18, USC, §§ 2119(1) (motor vehicle robbery) and 924(c) (use of a firearm during a crime of violence).

18, USC, §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm).

21, USC, §§ 841(a)(1) and 841(b)(1)(C) (intent to distribute and attempted to distribute controlled substances).

18, USC, § 924(c) (use of a firearm in furtherance of drug trafficking).

## AFFIDAVIT FOR SEARCH WARRANT

Affiant, Caleb Porter, being first duly sworn on oath, states as follows:

## INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1.      This affidavit is in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am employed as a Detective with the West Allis Police Department has been so employed since 2004.  I am currently assigned to the Criminal Investigations Bureau and have served in that capacity since 2013.

3.      I am a deputized Federal Task Force Officer, with the United States Department of Justice and assigned to the FBI Metro Milwaukee Area Violent Crimes Task Force.  As such, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7) and 21 U.S.C. § 878, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4.      During my employment with the West Allis Police Department, I have conducted numerous investigations of a variety of crimes, which have resulted in lawful arrests and criminal convictions of offenders.  I have participated in numerous narcotics, violent crime, bank

1

robbery, commercial robbery, and carjacking investigations in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, 2119, and other related offenses. I have employed a wide variety of investigative techniques in these and other investigations, including but not limited to, the use of informants, cooperating defendants, recorded communications, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops. I have also received formal training regarding the same.

5.     The facts set forth in this affidavit are based on affiant's personal knowledge, including what affiant has learned through training and experience as a law enforcement officer, review of documents, surveillance footage, and other records obtained in the course of this investigation to include Milwaukee Police Department ("MPD") reports 21-286-0178 and 21-291-0010, and information obtained from Milwaukee Police Officers. Affiant has utilized MPD reports and worked with MPD officers in the past and found them to be truthful and reliable.

6.     Based on the investigation to date, I believe there is probable cause to believe that Sidney R. Gentry (XX/XX/1995) and at least one other person committed the armed carjacking of A.C. on October 13, 2021, in Milwaukee, Wisconsin, in violation of Title 18, United States Code, Sections 2119(1) (motor vehicle robbery) and 924(c) (use of a firearm during a crime of violence). I further submit that there is probable cause to believe that on October 18, 2021, Gentry possessed a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (felon in possession of a firearm). Finally, I submit that there is probable cause to believe that on or about October 13, 2021, and October 18, 2021, Sidney Gentry possessed with intent to distribute and attempted to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C),

and did so in possession of a firearm, in violation of Title 18, United States Code, Section 924(c) (use of a firearm in furtherance of drug trafficking).

7.      This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not preclude the possibility of further information or evidence being developed.

8.      More specifically, I seek authorization to search Facebook's records, data, and information associated the account listed below:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION -UID |
|---|---|
| LilDemon Gentry | 100037278574461 |

**PROBABLE CAUSE**

9.      On October 13, 2021, at approximately 6:00 p.m., Milwaukee Police Detectives Jacob Ivy and Matthew Davis responded to 2493 West Monroe Street in Milwaukee, Wisconsin, to investigate an armed robbery complaint.  The incident reportedly occurred in the Clark gas station parking lot, which is located at 2514 North 27th Street in Milwaukee, Wisconsin.

10.     The victim was identified as A.C. who provided a statement to Detectives Ivy and Davis.  A.C. explained that his girlfriend is pregnant and he went to the Clark gas station to get her snacks.  A.C. drove his mother's black 2007 Lexus IS 250 sedan to the gas station.  This vehicle had license plate AHV6450, was registered to L.L., and had previously traveled in interstate commerce.

11.     A.C. parked his vehicle by backing in near the air pumps along the south side of the station parking lot.  A.C. remembered seeing the suspect vehicle park at the northeast pumps

3

and described it as a bronze 2000's Chevy Blazer with a damaged black rear bumper. A.C. entered the store without incident and shopped for snacks.

12.     While A.C. was shopping, he was approached by Suspect 1, who was later identified as Sidney R. Gentry (XX/XX/1995). Gentry asked A.C. if he wanted to buy any drugs and offered him "gas" and "rollers", which A.C. understood as slang terms for marijuana and pills. A.C. declined the offer. A.C. stated that Gentry was persistent about selling him drugs and was following A.C. around the store. A.C. kept telling Gentry that he did not want any drugs.

13.     A.C. indicated that he eventually became annoyed with Gentry, so A.C. decided to bring up Facebook on his phone, gave Gentry his phone, and told him to enter his Facebook name into the search bar. Gentry entered the Facebook name "LilDemon Gentry", of which A.C. took a screenshot. It was around this time that Suspect 2 entered the gas station. On or about October 21, 2021, Detective Stephanie Seitz viewed a still photo of Suspect 2 from the gas station surveillance footage and identified Suspect 2 as Michael L. Jones (XX/XX/1994). MPD records showed that Detective Seitz had previously arrested Jones on April 18, 2021.

14.     After making his purchase, A.C. walked back towards his vehicle and Gentry and Jones followed. Gentry continued to bother A.C. about buying drugs, which A.C. refused. Jones then pulled out marijuana contained in baggies and offered it to A.C., which A.C. refused. A.C. then heard Jones tell Gentry he was going to leave. It was at this time that Gentry produced a small black semi-auto pistol from his pants pocket and hand it to Jones, who initially started walking away. A.C. remembered seeing a red button near the slide of the pistol.

15.     Gentry again asked A.C. to buy drugs and A.C. told Gentry to enter his phone number in A.C.'s phone just so Gentry would leave him alone. A.C. had his phone out and offered it to Gentry. A.C.'s car keys were wrapped around his pinky finger at this time and

4

Gentry grabbed the keys from A.C.'s hand. Gentry ordered A.C. not to move and told Jones (who had come back around to A.C.'s vehicle) to shoot A.C. if he moved.

16. Gentry entered the driver's seat of the Lexus and then accused A.C. of jumping Gentry's cousin. A.C. stated he did not know what Gentry was talking about and Gentry then demanded to know A.C.'s name. A.C. refused to tell Gentry, who then drove away in the Lexus. A.C. believed that Jones entered the passenger side of a Chevrolet Trailblazer, which took off in the same direction of the Lexus. A.C. then went home and called police.

17. The activity described above was captured on surveillance footage from the Clark gas station. Gentry was wearing a black tank top, blue jeans with a yellow stripe down the legs, multi-colored athletic shoes, and a shell necklace with red, green, and yellow beads. Jones was wearing a black, hooded sweatshirt with red lining, black pants, white belt, and gray shoes.

18. The interaction on the surveillance footage between Gentry and A.C. is consistent with A.C.'s statement to law enforcement. The footage shows A.C. hand Gentry his phone and Gentry can be seen entering something into it. The footage also shows an interaction between Gentry and Jones during which Jones hands Gentry a baggie that was twisted in the corner, consistent with drug packaging. A.C. reported that when Gentry and Jones followed A.C. back to A.C.'s vehicle, Jones presented A.C. with a baggie that was again consistent with drug packaging.

19. As reflected in the footage, as Gentry interacts with A.C. on the driver's side of A.C.'s vehicle, Jones starts to walk away, back toward the Trailblazer. However, he then turns around and walks to where A.C. and Gentry are, next to A.C.'s vehicle. Jones walks past Gentry briefly then stands behind A.C. while Jones keeps his right hand indexed near his right sweatshirt pocket. Affiant was able to isolate an image of Jones during this time in the video and he is

holding what appears to be a firearm in his right hand. Eventually, Gentry enters A.C.'s vehicle and drives away. Jones walked back to the Trailblazer, enters a passenger seat, and the unknown subject driving the Trailblazer exits the parking lot and leaves the area in the same direction as Gentry in A.C.'s stolen vehicle.

20. On October 14, 2021, at approximately 12:15 a.m., Detective Davis presented a photo array to A.C., which included a photo of Gentry. A.C. positively identified Gentry as Suspect 1, who robbed him of his vehicle.

21. On October 18, 2021, at approximately 1:13 a.m., Milwaukee Police Officers were monitoring traffic near the intersection of North 21st and West Hopkins Streets. They observed the stolen Lexus turn south onto North 21st Street from eastbound West Hopkins Street. Officers were aware that the vehicle had been reported stolen in an armed robbery and followed it. When they did so, they confirmed the vehicle had the same license plate as provided by the victim, A.C.

22. At approximately 1:14 a.m., officers activated their emergency lights and siren to conduct a traffic stop. The vehicle was in approximately the 2400 block of West Locust Street at that time and instead of complying, the vehicle sped away westbound.

23. Officers initiated a pursuit and observed the stolen Lexus weave through traffic, reach speeds of over 80 mph, and disregard traffic signs and signals. The pursuit lasted about 3.8 miles and ended in the alley behind 2029 North 28th Street, where the vehicle suddenly stopped.

24. Gentry was observed exiting the driver's door and fleeing eastbound on foot. A male and female passenger also exited the stolen vehicle and fled westbound on foot. The male party was apprehended and later identified as juvenile male B.B. The female got away and was

not identified. B.B. was later questioned and determined to have not been involved in the robbery incident.

25.     Officers pursued Gentry on foot. Near the address of 2020 North 28th Street, they believed that Gentry had fallen because one of the officers heard the sound of a metallic object hitting and sliding across pavement and saw Gentry getting up from the ground. Based on similar encounters/experiences, the officer believed he had heard the sound of a firearm falling to the ground. Another officer recovered a loaded Taurus G2 9mm pistol from this same location shortly thereafter. The firearm had previously traveled in interstate commerce. The magazine was missing from the firearm.

26.     Officers continued to pursue Gentry, who was eventually arrested near 2003 North 27th Street. Upon searching Gentry's flight path, an officer located the magazine for the recovered Taurus pistol in the yard of 2020 North 28th Street. On the sidewalk near this same address, the officer located the key fob for the stolen Lexus.

27.     Law enforcement searched the stolen Lexus. They recovered a black Samsung cellphone in a black plastic case in the driver's foot well. This item was collected and later placed on inventory under number 21040705, Item #1. This phone was determined to have IMEI number 359011834052338. Officers also located packaged crack cocaine and MDMA/ecstasy pills in the center console.

28.     Gentry has prior felony convictions for Take and Drive Vehicle without Consent (in 2017), Vehicle Operator Flee/Elude Officer (in 2015), and Theft (in 2015).

29.     On October 18, 2021, at about 5:00 p.m., Milwaukee Police Detective Amy Stolowski conducted a custodial interview of Gentry, during which his Miranda rights were read

7

and waived. Gentry admitted to operating the stolen Lexus but denied having a firearm and denied being involved in the robbery of A.C. of the Lexus.

30. Detective Stolowski looked over Gentry's clothing and seized a shell necklace. Affiant reviewed the gas station surveillance video as well as body camera footage showing Gentry at the time of his arrest and noted that the necklace appeared to be the same. Affiant also noted that on the date of his arrest, Gentry appeared to be wearing the same jeans that he was wearing during the robbery of A.C. These jeans were placed into Gentry's personal property at the Milwaukee County Jail, where he remains in state custody.

31. Given Gentry's admission to driving the Lexus and the observations of him as the driver, I believe that the Samsung phone located in the driver's foot well is likely associated with him. Through training and experience, your Affiant knows that persons engaged in criminal activity, including drug trafficking and carjacking(s), will often utilize cell phones and other electronic devices to help facilitate their crimes. Additionally, due to the purveyance of cell phones and electronic devices in society, it is not uncommon for evidence to be located on these devices, even if that evidence is unknown to the user.

32. On November 11, 2021, Affiant located the Facebook page associated with the user name that Gentry entered onto A.C.'s cell phone, "lildemon.gentry". The User ID associated with this account is 100037278574461. The last publicly viewable post on the "LilDemon Gentry" Facebook page was from December 28, 2019. I observed multiple photographs and videos of Sidney Gentry on the Facebook page associated with this account. There was a video posted on September 2, 2019, in which Gentry is pointing what appears to be a real firearm at the camera. At one point in this video, Gentry pointed the firearm upward and I

observed a silver section on the frame that was consistent with a serial number tag, further reflecting that the firearm was real.

33.     Affiant observed another video posted on August 25, 2019.  In this video, Gentry is in a moving vehicle and at several moments in the video, Gentry points a firearm towards the camera.

34.     Due to Gentry entering this Facebook username into A.C.'s phone with the intent to connect at a later time for the purpose of selling A.C. drugs, Affiant submitted a preservation request for this account.  Affiant is aware that drug transactions and other communications to facilitate criminal acts often occur through Facebook Messenger, and those communications are not publicly viewable.  Affiant is also aware that Facebook users are also able to post photos, videos, and wall messages that are not always viewable to the general public, but only viewable to "friends in common" or a smaller subset of Facebook users.  Affiant requests a search warrant for this Facebook account as this information will likely contain evidence of the aforementioned crimes.

### *Types of Evidence Available Through Facebook*

35.     Affiant is aware of the common use of Facebook by criminal suspects and has examined or been involved in investigations where examinations have occurred concerning dozens of Facebook account profiles secured with the authority of search warrants or consent.  Affiant has personally made or been made aware of numerous of recurring observations, made with such repeated consistency for Affiant to have come to believe them to be significantly more probable than improbable.   Those observations include the commonality of suspects disclosing their pre-pay and nameless cellular numbers in private wall posts and text messaging.  Affiant is also aware of the commonality of criminal suspects to use the private messaging to orchestrate the liquidation

of robbery loot, trade, rent or borrow vehicles used in commercial robberies, discuss of the commission of robberies, and disclosing their most current lodging arrangements. Further, Affiant is aware that criminal suspects often upload images and video of themselves and their co-actors wearing clothing worn in the commission of the robberies and casing visits as well as weapons and vehicles used in the crimes and of robbery loot obtained from those criminal endeavors. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

36. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

37. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

10

38.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

39.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

40.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account

11

will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

41.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

42.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

43.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

44.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

45.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the

12

account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

46.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

47.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

48.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

49.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

50.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings;

13

rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

51. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

52. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

53. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, which may not be publicly accessible, can indicate who has used or controlled the

14

Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

54.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

55.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications and location data) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

56.     Based on the facts contained within this affidavit, I believe that probable cause exists to search the Facebook Account with username "LilDemon Gentry", which is more particularly described in Attachment A, for evidence of armed motor vehicle robbery, felon in possession of a firearm, drug trafficking, and use of a firearm during and in relation to a crime of violence and drug trafficking.

57.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a district court of the United States in the Eastern District of Wisconsin that has jurisdiction over the offense being investigated.

58.     The presence of a law enforcement officer is not required for the service or execution of this warrant.

16

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the following Facebook Account associated with Sidney R. Gentry:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION -UID |
|---|---|
| LilDemon Gentry | 100037278574461 |

that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, photographs, videos, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including for user "LilDemon Gentry" with User ID 100037278574461**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the accounts and all other documents showing the users' posts and other Facebook activities;

(c)     All photos and videos uploaded by those user IDs and all photos and videos, including live video feeds, uploaded by any user that have either of those users tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook

applications;

(e)     All other records of communications and messages made or received by the users,

including all private messages, chat history, video calling history, and pending

"Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the accounts;

(h)     All records of the accounts' usage of the "Like" feature, including all Facebook

posts and all non-Facebook webpages and content that the users "liked";

(i)     All information about the Facebook pages that the accounts are or were a "fan"

of;

(j)     All past and present lists of friends created by the accounts;

(k)     All records of Facebook searches performed by the accounts;

(l)     All information about the users' access and use of Facebook Marketplace;

(m)    The types of service utilized by the users;

(n)     The length of service (including start date) and the means and source of any

payments associated with the service (including any credit card or bank account

number);

(o)     All privacy settings and other account settings, including privacy settings for

individual Facebook posts and activities, and all records showing which Facebook

users have been blocked by the account;

2

(p)     All records pertaining to communications between Facebook and any person regarding the user or the users' Facebook accounts, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 2119(1) (Motor Vehicle Robbery); Title 18, United States Code, Section 924(c) (Use of Firearm during a Crime of Violence or in Furtherance of Drug Trafficking); Title 18, United States Code, Section 922(g) (Felon in Possession of a Firearm); and Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute and distribution of controlled substances), occurring in October 2021, involving Sidney Gentry, or any associate in the criminal violations, for the user ID identified on Attachment A, including information pertaining to the following matters:

(a) Communications between known subjects.  Communications between known subjects and unknown subjects.  Pictures of clothing, jewelry, or accessories worn and the gun used during armed robbery.  Preparatory steps taken in furtherance of the armed robbery.  Photos of vehicles involved in the armed robbery, including but not limited to, the stolen Lexus.

(b) Communications or photographs related to firearms possession.

(c) Communications or photographs related to drug trafficking.

(d) Communications related to travel. Communications related to dates.

(e) Evidence indicating how and when the Facebook accounts were accessed or used, to determine the chronological and geographic context of account access, use, and

3

events relating to the crime under investigation and to the Facebook account owner;

(f) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(h) The identity of the person(s) who communicated with the user ID 100037278574461 regarding matters relating to the aforementioned violations of the United States Code.

4